# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00086-CV

Appellant, Cristina L. Treadway// Cross-Appellants, Sheriff James R. Holder
and Comal County, Texas

v.

Appellees, Sheriff James R. Holder and Comal County, Texas// Cross-Appellee,
Cristina L. Treadway

FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. C2006-0918A, HONORABLE RONALD G. CARR, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I believe that government code chapter 614, subchapter B, properly interpreted, does not apply to allegations that originate from within the employee's chain of command.[1] In order to hold that Subchapter B applies to allegations originating from within the employee's chain of command, the majority relies on evidence favoring neither interpretation and ignores the evidence favoring the opposite interpretation. I would affirm the judgment of the district court in all respects.

_____

[1] I agree with the majority that there is no distinction between "external" complaints relating to an employee and "internal" complaints—i.e., between complaints generated outside an organization and those generated within the organization—for purposes of the application of Subchapter B. However, I do believe there is a distinction, for purposes of Subchapter B, between "complaints" made against an employee by persons outside the employee's supervisory or reporting hierarchy and performance evaluations within the hierarchy.

The issue in this case is whether the allegations that Treadway lied to her supervisor and falsified training documents—allegations that originated from within Treadway's chain of command—constituted a "complaint" in accordance with Subchapter B. In construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006). We should look first to the plain and ordinary meaning of the statute's words. *Id.* We may also consider the object sought to be attained, the consequences that would follow from a particular construction, and any legislative history. *See* Tex. Gov't Code Ann. § 311.023 (West 2005). We should presume that the legislature intended a just and reasonable result. *See id.* § 311.021(3) (West 2005).

The majority concludes that *any* "allegation of misconduct," regardless of its source, constitutes a "complaint" for purposes of Subchapter B. However, the majority's conclusion is an unreasonable reading of the statutes' plain language. Under the majority's construction, the agency head's own allegations could not even be "considered" until he first wrote them down and signed the document. *See id.* § 614.022 (West Supp. 2009). There seems little reason to require a complaint from one's own superiors to be "signed," *see id.* § 614.022(2), as the employee would presumably know the identity of his own superiors. It also seems unnecessary to require such a complaint to be "filed," *see id.* § 614.023(a) (West Supp. 2009), when the employee's superiors would presumably be filing the document with themselves.[2] Moreover, when the employee's

---

[2] I construe the term "filed" to refer to the delivery of the complaint, not its storage. *See* Tex. Gov't Code Ann. § 614.023(a) (West Supp. 2009) (copy of complaint to be provided "within a reasonable time after the complaint is filed"). Otherwise, the employee's superiors could determine whether and when to disclose the existence of a complaint against the employee.

superiors' complaint is based on their own observations and conclusions, they would have little reason to ensure that their complaint is "investigated," *see id.* § 614.023(c)(1), particularly when the employee's employment is at will. If section 614.023 were intended to apply to any termination for cause—which is the practical consequence of the majority's interpretation of the statute—one would expect such intent to be more explicit than is present in Subchapter B. Instead, Subchapter B's language indicates that the purpose of the legislation is to ensure that the employee's chain of command sufficiently identify, communicate, and investigate complaints originating from outside that chain of command. The more reasonable interpretation of Subchapter B is that a "complaint" is one that is *received*—not created—by the employee's chain of command.

Recent legislative history supports the interpretation that the term "complaint" does not refer to disciplinary actions originating from within the employee's chain of command. A bill analysis for the 2005 amendment to Subchapter B—which expanded the class of employees covered by Subchapter B and added subsection (c) to section 614.023—stated as follows:

> Current law allows politically powerful people to have an officer fired simply by filing a complaint. Therefore, the only people who might be deterred by this bill from filing a complaint are those who intend to file baseless complaints for their own personal benefit. Those who file legitimate claims, which are the majority of complainants, would not be hindered by this bill.

Tex. House Research Org., Bill Analysis, Tex. H.B. 639, 79th Leg., R.S. (2005). An implication of this paragraph is that Subchapter B is directed at those who seek to have an officer fired, not at those who already possess the direct authority to fire them. The majority's conclusion to the contrary will, I believe, be a surprise to the legislature.

3

According to another bill analysis for the 2005 amendment, a flaw in the pre-2005 version of the statute was that it did not require investigation or sufficient evidence "when disciplinary action is taken against an employee *based on a complaint*." *See* Tex. House Comm. on Urban Affairs, Bill Analysis, Tex. H.B. 639, 79th Leg., R.S. (2005) (emphasis added). The inclusion of the italicized phrase indicates that disciplinary action can also be taken in the absence of a complaint. Since it is reasonable to assume that disciplinary action would occur only in the event of alleged misconduct, it stands to reason that not all such allegations constitute a "complaint" for purposes of the statute. The employee's supervisor may make a determination of cause for disciplinary action in the absence of a Subchapter B complaint, or independent of such a complaint—as, I would hold, occurred here.

It is also noteworthy that the courts of appeals that have construed Subchapter B (or its predecessor statute) have done so in the context of an allegation of misconduct originating from outside the employee's chain of command. *See Turner v. Perry*, 278 S.W.3d 806, 823-24 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (statements from "fellow officers who wish to remain anonymous" and "concerning unidentified students"); *City of Athens v. MacAvoy*, 260 S.W.3d 676, 678 (Tex. App.—Tyler 2008, no pet.) (allegations by female citizen and her husband); *City of Seagoville v. Lytle*, 227 S.W.3d 401, 405-06 (Tex. App.—Dallas 2007, no pet.) (complaint filed against immediate supervisor); *Guthery v. Taylor*, 112 S.W.3d 715, 717-18 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citizen's complaint prompting departmental investigation); *Fudge v. Haggar*, 621 S.W.2d 196, 197 (Tex. Civ. App.—Texarkana 1981, writ ref'd n.r.e.) (report from sheriff's department of improper conduct by patrolman in police department);

4

*see also Putter v. Anderson*, 601 S.W.2d 73, 77 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) (citizen's written complaint); *Graves v. City of Dallas*, 532 S.W.2d 106, 107 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) (citizens' written charges of misconduct). Since Subchapter B's original enactment in 1969, there is no authority (other than the majority's holding in this case) for the proposition that an allegation or disciplinary issue originating from within one's chain of command constitutes a "complaint" for purposes of Subchapter B.

The majority's holding is also inconsistent with the Fourteenth Court of Appeals' analysis in *Guthery v. Taylor*. In *Guthery*, the police department proposed disciplinary action against a police officer based on its investigation of a citizen's complaint against the officer. *See* 112 S.W.3d at 718-19. At issue was whether the applicable complainant was the chief of police or the citizen. *See id.* at 721. In holding that the citizen was the complainant, the court relied on section 143.123 of the Texas Local Government Code based on the statutes' similar nature, purpose, and legislative history. *See id.* at 722-23. The majority in this case, addressing *Guthery*, acknowledges that section 143.123 defines the term "complainant" as "a person claiming to be the victim of misconduct." *See* Tex. Loc. Gov't Code Ann. § 143.123(a)(1) (West 2008). Yet, in this case, there is simply no "victim of misconduct," other than the sheriff's office itself. If Treadway's termination were based on Cline's allegation of missed meetings, a complaint might have been required under Subchapter B. Treadway's termination was based, instead, on her alleged dishonesty to her superiors during the investigation of Cline's allegation. This is not a situation in which the protections of Subchapter B are necessary. There is no concern of individuals outside Treadway's

5

chain of command conspiring to interfere with her employment. Treadway's alleged misconduct was an internal disciplinary matter, and the allegations of such conduct were made by her superiors.

The evidence demonstrates, as a matter of law, that the allegations of Treadway's dishonesty originated from within her chain of command during an investigation of a trainee's complaint, and that Treadway's termination of employment was based on those allegations, not the complaint under investigation. Therefore, I would affirm the judgment of the district court.[3]

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Waldrop and Henson

Filed: April 16, 2010

---

[3] Both Treadway and the County also appeal the district court's denial of their respective requests for attorneys' fees. In addition to affirming the district court's ruling on the parties' motions for summary judgment, I would conclude that the district court did not abuse its discretion in denying both sides' requests for attorneys' fees.