

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00968-CV

Herbert Lawrence **POLINARD**, Jr. and William Ian Malcomson,
Appellants

v.

**WOODLAWN CHRISTIAN CHURCH OF SAN ANTONIO, INC.**,
James Paul Tisdel, Jr., Carolyn Tisdel, and George Alejos,
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CI-10692
Honorable Tina Torres, Judge Presiding[1]

Opinion by: Lori I. Valenzuela, Justice

Sitting: Rebeca C. Martinez, Chief Justice
Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice

Delivered and Filed: July 30, 2025

AFFIRMED IN PART; DISMISSED FOR LACK OF JURISDICTION IN PART

Appellants Herbert Lawrence Polinard, Jr. and William Ian Malcomson challenge a

December 23, 2015 temporary injunction and an August 4, 2023 final judgment rendered in favor

of appellees Woodlawn Christian Church of San Antonio, Inc. ("the church"), James Paul Tisdel,

---

[1] The Honorable Tina Torres signed the orders that collectively form the final judgment in this case. The Honorable Antonia Arteaga signed a December 23, 2015 temporary injunction that is also challenged in this appeal.

Jr. and Carolyn Tisdel ("the Tisdels"), and George Alejos. The final judgment resulted from: (1) two summary judgment orders that disposed of claims asserted by Polinard, Malcomson, and others; and (2) the church's and the Tisdels' voluntary nonsuit of their own claims.

We ultimately conclude that Polinard's and Malcomson's challenges to the December 23, 2015 temporary injunction are dismissed for lack of jurisdiction. We affirm the trial court's final judgment. The Tisdels' and Alejos's pending motions to dismiss this appeal are denied as moot.

## BACKGROUND

### A. The Parties' Designations

During this case, both sides have claimed to be the rightful representatives of the church, described themselves as plaintiffs and their opposing parties as defendants, and filed pleadings that identified the church itself as a plaintiff that was aligned with the filing party. At times, the church was nominally a party on both sides of this dispute. The orders challenged in this appeal identified the church, the Tisdels, and Alejos as counter-plaintiffs and Polinard, Malcomson, and other individuals who were parties below but are not parties to this appeal as counter-defendants.

To avoid confusion, this opinion will primarily refer to the parties by their names rather than their party designations. Where it is necessary to use party designations, we will refer to the church, the Tisdels, and Alejos Flas counter-plaintiffs. We will refer to Polinard, Malcomson, and the individuals who were aligned with them below—Irene Polinard ("Mrs. Polinard"), Matthew Reynolds, Daniel McCollough, Honorio Velasquez, and Lilda Monica Torres—as counter-defendants. Our use of these party designations is solely for the purpose of consistency with the final judgment and should not be construed as a comment on the parties' relationships to or authority over the church.

### B. The Parties' Filings in the Trial Court

The proceedings that led to this appeal began ten years ago. On June 30, 2015, an original petition that identified the church as the sole plaintiff alleged that the Tisdels and Alejos had conspired to act on the church's behalf without authority and discriminated against its members. Attorney Nelson P. Skinner signed the petition. Shortly thereafter, attorney Carl J. Kolb also entered an appearance on the church's behalf. It is undisputed that Polinard hired Skinner and Kolb to represent the church, but the parties disagree about whether he had authority to do so.

When the Tisdels filed their original answer to the June 30, 2015 petition, they purported to do so on behalf of both themselves and the church. Throughout the proceedings below, the Tisdels' filings identified the church as a party aligned with the Tisdels and against the counter-defendants.

In July 2015, Stephen Kennedy filed a *pro se* petition to intervene in this dispute. In August 2015, the Tisdels filed a motion to show authority, which argued that Skinner and Kolb did "not have proper authority for representation" of the church and the pleadings they had filed on its behalf should be stricken. The trial court signed an order granting the motion and striking the pleadings filed by Skinner and Kolb. On behalf of the church, Skinner filed a motion asking the trial court to reconsider that ruling.

The Tisdels and the church subsequently filed a counterpetition for declaratory judgment against the counter-defendants and Kennedy. The counterpetition alleged that the June 30, 2015 petition that instigated this lawsuit was filed "unilaterally under the name of [the church] by Mr. Polinard"; that Polinard had breached a fiduciary duty to the church; that Polinard, Malcomson, and Kennedy had made defamatory statements about the Tisdels; and that "[a]ll

Counterdefendants" had engaged in a conspiracy "to deprive [the Tisdels] of their rights in operating" the church. The Tisdels and the church sought declaratory and injunctive relief.

Because the trial court had stricken the pleadings attorney Skinner filed on the church's behalf (*i.e.*, the claims Polinard sought to assert in the church's name), the church filed a December 2015 petition in intervention "by and through" Polinard and a second individual who is not party to this appeal. Attorney Markes Kirkwood signed the petition; it is undisputed that Polinard hired him to do so.

On January 12, 2016, the Tisdels and the church filed a first amended motion to show authority, which alleged that Skinner, Kolb, and Kirkwood did not have authority to represent the church.

On January 15, 2016, the trial court signed a nunc pro tunc order that "GRANTED the Motion to Reconsider filed by Nelson Skinner and ORDERED that the Motion to Show Authority filed by [] James Paul Tisdel, Jr. and Carolyn Tisdel be reset in the Presiding District Court." The trial court further ordered "that the causes of action asserted by [the church] in its original and supplemental petitions [filed by Skinner] were reinstated[.]" The January 15, 2016 nunc pro tunc order did not address the then-pending first amended motion to show authority.

Kirkwood continued filing motions and petitions that identified the church as aligned with the counter-defendants until March 24, 2016, when he filed a motion to withdraw. The record appears to show that the trial court orally granted the first amended motion to show authority on March 30, 2016. On February 22, 2017, the trial court signed a written order entitled "March 30, 2016 Order" which, *inter alia*, granted Kirkwood's motion to withdraw; granted the first amended motion to show authority; found that Skinner, Kolb, and Kirkwood did "not have authority to prosecute and defend this suit on behalf of" the church; and struck all pleadings filed by Skinner,

Kolb, and Kirkwood. The record does not show that the trial court reconsidered or withdrew the "March 30, 2016 Order," and Polinard and Malcomson have not challenged that order on appeal. Accordingly, the claims raised in the pleadings filed by attorneys Skinner, Kolb, and Kirkwood are not before this court.

In April 2016, attorney Vincent Lazaro entered an appearance on Polinard's behalf. He appeared on behalf of the remaining counter-defendants shortly thereafter and continued representing them until he filed a motion to withdraw in June 2023. While the counter-defendants still claimed they had the rightful authority to act on the church's behalf, Lazaro's filings did not identify the church as aligned with them.

C.      *The December 23, 2015 Temporary Injunction*

In the midst of the proceedings described above, the trial court held a three-day evidentiary hearing that addressed several matters, including the church's and the Tisdels' request for a temporary injunction and their motion to strike the intervention that Kirkwood had filed on the church's behalf. On December 23, 2015, the trial court signed an order that, *inter alia*, struck the Kirkwood intervention and imposed a temporary injunction "operative until judgment is entered in this cause[.]"

The temporary injunction barred Polinard, Kennedy, Malcomson, Torres, and their agents from: (1) holding themselves out or representing themselves as members of the church's board of directors; (2) taking any action under the church's name; and (3) "making false claims against CounterPlaintiffs, specifically by claiming that Mr. Tisdel is not properly ordained or that [*sic*] alleging that any of the CounterPlaintiffs have stolen money or property from [the church] or any other Church[.]" It also enjoined Polinard, Kennedy, and Malcomson and their agents from coming onto the church's property.

Between December 23, 2015 and the August 2023 final judgment, the counter-defendants and Kennedy filed multiple motions and pleas to the jurisdiction challenging the trial court's authority to enter the temporary injunction. Many of those motions and pleas argued that the temporary injunction was void because it violated the Ecclesiastical Abstention Doctrine, which "prohibits civil courts from delving into matters of 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" *In re Diocese of Lubbock*, 624 S.W.3d 506, 508–09 (Tex. 2021) (orig. proceeding) (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976)). They also filed three petitions for writ of mandamus in this court that challenged the temporary injunction, and we denied those petitions. *See In re Kennedy*, No. 04-16-00173-CV, 2016 WL 1449527, at *1 (Tex. App.—San Antonio Apr. 13, 2016, orig. proceeding) (per curiam) (mem. op.); *In re Kennedy*, No. 04-16-00064-CV, 2016 WL 519647, at *1 (Tex. App.—San Antonio Feb. 10, 2016, orig. proceeding) (per curiam) (mem. op.); *In re Kennedy*, No. 04-16-00001-CV, 2016 WL 147147, at *1 (Tex. App.—San Antonio Jan. 13, 2016, orig. proceeding) (per curiam) (mem. op.). They did not file an interlocutory appeal challenging the injunction.

### D.     The Resolution of the Parties' Claims

On April 6, 2022, the counter-defendants filed their fourth amended petition. In this petition, the counter-defendants alleged claims of common law fraud, conspiracy, negligent misrepresentation, breach of contract, negligence, intentional infliction of emotional distress, conversion, defamation, assault, trespass, and breach of fiduciary duty against the Tisdels and Alejos.

On April 11, 2022, the trial court signed an agreed order that dismissed Kennedy's intervention with prejudice. The order also dismissed any claims the Tisdels had asserted or could

assert against Kennedy. Kennedy did not enter any further appearances below, and he is not a party to this appeal.

On April 18, 2022, the church and the Tisdels filed a "First Amended No Evidence Motion for Summary Judgment," which addressed most of the claims asserted against the Tisdels in the counter-defendants' fourth amended petition. The First Amended No Evidence Motion for Summary Judgment did not address any claims that had been asserted against Alejos or by counter-defendant Torres.[2]

Before the trial court ruled on the First Amended No Evidence Motion for Summary Judgment, the counter-defendants filed their fifth and sixth amended petitions. Those petitions repeated the claims alleged in the fourth amended petition and added claims of federal civil rights violations and tortious interference with Polinard's and Malcomson's businesses.

On January 9, 2023, the trial court signed an "Order Granting Partial Summary Judgment," which disposed of Polinard's, Mrs. Polinard's, Malcomson's, Reynolds's, and Velasquez's claims against the Tisdels "as set out in their Fourth Amended Petition[.]" Like the First Amended No Evidence Motion for Summary Judgment, the partial summary judgment order did not address the claims brought by Torres or against Alejos.

On March 13, 2023, the church, the Tisdels, and Alejos filed a "Second No Evidence Motion for Summary Judgment." The motion noted that the trial court had already granted summary judgment as to "all claims asserted by all Counter-Defendants, except Lilda Monica Torres[.]" It further stated that the new motion was intended to address "all claims made by Ms. Torres against all Movants in Counter-Defendants['] Sixth Amended Petition," "all claims made by all Counter-Defendants against Mr. Alejos in Counter-Defendants['] Sixth Amended Petition,"

---

[2] The motion also did not address McCollough's claims, presumably because the record shows that he died before the motion was filed. His estate has not appeared in this litigation.

and all claims asserted in the sixth amended petition "which remain after the January 9, 2023 [partial summary judgment] order[.]"

On March 20, 2023, the church and the Tisdels filed a second amended counterpetition, which alleged claims of breach of fiduciary duty, slander, trespass, and civil conspiracy against the counter-defendants. This was the church's and the Tisdels' live petition for the remainder of the proceedings below.

On March 20, 2023, the counter-defendants filed a seventh amended petition, which sought to add several new claims. Because the deadline to add new claims had already expired under the court's docket control order, the counter-defendants later filed a motion for leave to file the amended petition. The trial court denied the motion for leave to amend, and Polinard and Malcomson have not challenged that ruling on appeal. As a result, the counter-defendants' sixth amended petition was their live petition for the remainder of the proceedings below.

On July 3, 2023, the trial court signed an "Order Granting Counter-Plaintiffs' Second No Evidence Motion for Summary Judgment." The trial court's order expressly disposed of "all claims asserted by any of the Counter-Defendants as to any of the Counter-Plaintiffs, that were not already granted in this Court's January 9, 2023 Order Granting Partial Summary Judgment." It also ordered that Polinard, Malcomson, and the other counter-defendants "shall take nothing of and from Counter-Plaintiffs James Paul Tisdel, Jr., Carolyn Tisdel, Woodlawn Christian Church of San Antonio, Inc., and George Alejos."

On August 3, 2023, the church and the Tisdels filed a motion "to nonsuit and dismiss all claims against Counter-Defendants Herbert Lawrence Polinard, Jr., Irene Polinard, William Malcomson, Matthew Reynolds, Daniel McCollough, Honorio Velasquez, and Lilda Monica

Torres[.]" The trial court's August 4, 2023 order granting the nonsuit stated that it "finally disposes of all remaining claims and all remaining parties and is appealable."

Polinard and Malcomson both filed motions for new trial that were overruled by operation of law. This appeal followed. On November 21, 2024, the Tisdels and Alejos filed motions to dismiss this appeal, which we carried with the appeal.

**ANALYSIS**

### *The December 23, 2015 Temporary Injunction*

Both Polinard's first issue and Malcomson's sole issue argue that the December 23, 2015 temporary injunction violated the Ecclesiastical Abstention Doctrine. Malcomson also argues that the trial court erred by refusing to reconsider the December 23, 2015 temporary injunction and that the injunction was an improper prior restraint on speech. The Tisdels and Alejos respond that the trial court's final judgment, which was signed after the church's and the Tisdels' nonsuit of their affirmative claims,[3] mooted any challenges to the temporary injunction.

We agree with the Tisdels and Alejos. It is true that "if the substance and nature of the plaintiff's claims are inextricably intertwined with matters of [religious] doctrine or church governance, then the case must be dismissed" for lack of subject matter jurisdiction. *In re Diocese of Lubbock*, 624 S.W.3d at 514. Additionally, "[i]f the trial court lacks subject matter jurisdiction, the appellate court can make no order other than reversing the judgment of the court below and dismissing the cause." *Diocese of Lubbock v. Guerrero*, 624 S.W.3d 563, 564 (Tex. 2021) (per curiam) (internal quotation marks omitted). Here, however, there is nothing left of either the temporary injunction or the causes of action that led to it for us to dismiss.

---

[3] The record does not show that Alejos asserted any affirmative claims.

The temporary injunction arose out of the church's and the Tisdels' counterpetition for declaratory judgment. The trial court's December 23, 2015 order expressly stated that the temporary injunction was "operative until judgment is entered in this cause[.]" As explained below in our discussion of Polinard's second issue, the trial court's summary judgment orders expressly disposed of Polinard's, Malcomson's, and the other counter-defendants' claims against all of the counter-plaintiffs. At that point, only the claims in the church's and the Tisdels' counterpetition remained. The church and the Tisdels voluntarily nonsuited those claims, and their motion to nonsuit extinguished the counterpetition "from the moment the motion [was] filed[.]" *Univ. of. Tex. Med. Br. at Galveston v. Est. of Blackmon*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam) (internal quotation marks omitted).

As the trial court recognized in its order granting the nonsuit, the resolution of the counterpetition "finally dispose[d] of all remaining claims and all remaining parties[.]" Because the church's and the Tisdels' nonsuit resulted in a final judgment, it automatically dissolved the temporary injunction without any further action. *See In re Harriman*, No. 05-18-01332-CV, 2018 WL 6427328, at *1 (Tex. App.—Dallas Dec. 6, 2018, orig. proceeding) (mem. op.) ("When a trial court dismisses an action pursuant to a notice of non-suit, a temporary order rendered during the pendency of the cause automatically dissolves by operation of law without further order of the trial court and renders appellate proceedings related to the order moot."); *Rodman Excavation, Inc. v. YC Partners, Ltd.*, No. 04-07-00405-CV, 2007 WL 4116118, at *2 (Tex. App.—San Antonio Nov. 21, 2007, no pet.) (mem. op.).

Stated differently, both the counterpetition and the injunction "ceased to exist"—and any potential appellate proceedings from the injunction became moot—as soon as the nonsuit was filed. *See, e.g.*, *Gen. Land Off. of State of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex.

1990); *De Jesus Garza v. Zamora*, Nos. 13-15-00218-CV & 13-15-00237-CV, 2016 WL 1746132, at *1 (Tex. App.—Corpus Christi–Edinburg Apr. 28, 2016, no pet.) (per curiam) (mem. op.). Even if we agreed that the temporary injunction violated the Ecclesiastical Abstention Doctrine or improperly restrained the parties' free speech rights, our conclusion on that point would have no practical legal effect on the parties' rights. *See Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012) ("Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests.").

In his reply brief, Polinard concedes that "a temporary injunction ceases to exist and its illegal nature or unconstitutionality becomes moot when a trial court dismisses the case on a party's request for non-suit." He argues, however, that his challenge is exempt from the mootness doctrine under the "collateral consequences" exception because the temporary injunction "has lingering effects that continue to stigmatize or impact" him. As support for this contention, he cites *Brast v. Brast*, in which our sister court held that an appellant could challenge a family violence finding in an expired protective order because that finding carried the possibility of future legal repercussions. *See* 681 S.W.3d 788, 792 (Tex. App.—Houston [14th Dist.] 2023, no pet.). The *Brast* court noted, for example, that trial courts are statutorily required to consider past protective orders when deciding child custody issues. *See id.* (citing TEX. FAM. CODE § 153.004(f)).

These facts are distinguishable from *Brast*. As explained above, the temporary injunction is no longer in effect, and we see nothing in the record to support a conclusion that it might result in any future legal repercussions. While Polinard contends that the Tisdels and Alejos will continue to rely on the order to bar him and others from the church's property, he has not cited, and we are not aware of, any authority that permits us to review a dissolved, inoperative temporary injunction based solely on speculation that a party might improperly try to enforce it in the future. *See Cook*

*v. Hedtke*, No. 03-17-00663-CV, 2018 WL 1660078, at \*3 (Tex. App.—Austin Apr. 6, 2018, no pet.) (mem. op.) (declining to consider issue whose resolution "would require speculation and conjecture regarding the nature of the possible future violation"); *Armstrong v. Collin Cnty. Bail Bond Bd.*, 233 S.W.3d 57, 60 (Tex. App.—Dallas 2007, no pet.) (concluding issue was moot where appellant pointed only to "a speculative injury"). As the *Brast* court explained, a legal consequence that can no longer be enforced will not trigger the collateral consequences exception. *See Brast*, 681 S.W.3d at 792 (holding that an expired prohibition on right to possess firearms did "not carry significant collateral legal repercussions" and thus did not fall within the collateral consequences exception).

Polinard also suggests that his challenge to the temporary injunction is exempt from the mootness doctrine under the "capable of repetition yet evading review" exception. "This exception has two requirements: (1) that the challenged action was too short to be fully litigated before the action ceased or expired and (2) that a reasonable expectation exists that the same party will be subjected to the same action again." *Id.* (footnote omitted); *see also OXY U.S.A., Inc.*, 789 S.W.2d at 571. We decline to hold that this exception applies where, as here: (1) the temporary injunction was in place for almost eight years and was actively challenged for much of that time; and (2) Polinard could have brought an interlocutory appeal from the temporary injunction but failed to do so. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4). On this record, we cannot say the temporary injunction was of such short duration that it could not be fully litigated before it expired. *See OXY U.S.A., Inc.*, 789 S.W.2d at 571. Additionally, Polinard has not established a reasonable expectation that he will be subjected to a similar injunction in the future. *See Brast*, 681 S.W.3d at 792–93.

For these reasons, "any opinion regarding whether the trial court erred in granting the injunction . . . would clearly be advisory and without any practical legal effect." *Rodman Excavation*, 2007 WL 4116118, at *2. Because we "are prohibited from reviewing an injunction that has become moot," we dismiss Polinard's and Malcomson's challenges to the December 23, 2015 temporary injunction for lack of jurisdiction. *See Wolf v. Starr*, 456 S.W.3d 307, 309 (Tex. App.—El Paso 2015, no pet.) (internal quotation marks omitted); *Rodman Excavation*, 2007 WL 4116118, at *2.

### *The Summary Judgment Orders*

In his second issue, Polinard argues the trial court erred by granting a no-evidence summary judgment on his claims.[4] The Tisdels and Alejos respond that Polinard has not adequately briefed this issue.

Again, we agree with the Tisdels and Alejos. We recognize that Polinard is proceeding *pro se* in this appeal, and we liberally construe *pro se* briefs. *See Smith v. DC Civil Constr., LLC*, 521 S.W.3d 75, 76 (Tex. App.—San Antonio 2017, no pet.) (per curiam). Nevertheless, a *pro se* appellant must comply with the same rules and procedures as a licensed attorney. *See id.* "If an appellant presents an issue generally asserting the summary judgment evidence raised fact issues, that issue must also include argument and authority explaining how the evidence defeated each ground for summary judgment." *Cruz v. Sears, Roebuck & Co.*, No. 05-15-00737-CV, 2016 WL 4119771, at *3 (Tex. App.—Dallas July 29, 2016, no pet.) (mem. op.).

Polinard's opening brief correctly sets out the law that generally applies to appellate review of summary judgments. However, his argument about the facts of this specific case consists solely of the following:

---

[4] Malcomson did not brief any challenges to the summary judgment orders.

Appellees filed a no-evidence motion for summary judgment to which Appellants timely responded and specially excepted. Appellant Polinard timely responded to Appellees' motion for summary judgment. A review of the response and the evidence submitted demonstrates that there were fact issues raised that preclude the granting of summary judgment in favor of the Appellees. *Compare* CR 30 912 with CR 1103. The Appellants' response was supported by multiple documents and exhibits including (7) affidavits. The various facts and matters addressed or attempted to be address [*sic*] in Appellees' motion for no-evidence summary judgment are all detailed and identified in Appellants' response. *See e.g.*, CR 1124-1176. Appellants met their burden to bring forth evidence establishing or tending to prove the claims for which this action was brought by Appellants.

Therefore, the trial court erred in granting no-evidence summary judgment.

Polinard's opening brief does not identify the causes of action at issue, describe the evidence he presented below, or explain why that evidence raised genuine issues of material fact that were sufficient to defeat a no-evidence motion for summary judgment. *See id.* His summary judgment response below similarly failed to explain why the proffered evidence created fact issues. *See Comm'n for Lawyer Discipline v. Powell*, 689 S.W.3d 620, 628 (Tex. App.—Dallas 2024, no pet.) (summary judgment burden "requires the nonmovant to specifically identify the supporting proof it seeks to have considered by the trial court *and explain why it demonstrates a fact issue exists*") (emphasis added). We may not develop those arguments for him on appeal. *See Nakissa v. Menchaca*, No. 04-21-00149-CV, 2022 WL 17825722, at *2–3 (Tex. App.—San Antonio Dec. 21, 2022, no pet.) (mem. op.); *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

In his reply brief, Polinard argues that the trial court erred by granting a no-evidence summary judgment because the motion did not address two causes of action that were asserted in the counter-defendants' sixth amended petition. Like the opening brief, however, the reply brief does not describe the evidence presented below or explain why that evidence raised a genuine

issue of material fact on the required elements of the counter-defendants' claims. *See Cruz*, 2016 WL 4119771, at *3.

Furthermore, the record citations in both Polinard's opening brief and his reply brief point only to the church's and the Tisdels' first amended motion for summary judgment and the counter-defendants' response to that motion. The record shows, however, that the church and the Tisdels filed—and the trial court granted—two separate motions for no-evidence summary judgment. As Polinard correctly notes, the first motion, which the church and the Tisdels filed on April 18, 2022, addressed only the claims asserted in the counter-defendants' fourth amended petition. But the second, which the church, the Tisdels, and Alejos jointly filed on March 13, 2023, argued there was no evidence to support the required elements of the claims asserted in the counter-defendants' sixth amended petition. It also addressed "all remaining claims in Counter-Defendants' Sixth Amended Petition . . . which remain after" the first partial summary judgment order. During the June 21, 2023 hearing on the Second No Evidence Motion for Summary Judgment, the counter-plaintiffs' attorney emphasized that the motion "addresses all of the additional claims that weren't already ruled upon, as to the previous movants and respondents." The trial court's order granting that motion disposed of all claims and parties included in the sixth amended petition.

Neither Polinard's opening brief nor his reply brief addresses the Second No Evidence Motion for Summary Judgment, the counter-defendants' response to that motion, or the trial court's order granting that motion. *See Lander v. Bank of N.Y. Mellon*, No. 04-19-00731-CV, 2020 WL 5370596, at *1 (Tex. App.—San Antonio Sept. 9, 2020, no pet.) (mem. op.) ("If an appellant does not challenge all grounds upon which summary judgment could have been granted, we presume any unchallenged ground is meritorious and must affirm."). As a result, even if we agreed

that the trial court erred by granting the first summary judgment, we would have no choice but to affirm the second. *See id.*

We overrule Polinard's second issue.

## CONCLUSION

We overrule Polinard's challenges to the trial court's final judgment and affirm that judgment. We dismiss Polinard's and Malcomson's challenges to the December 23, 2015 temporary injunction for lack of jurisdiction. The Tisdels' and Alejos's pending motions to dismiss the appeal are denied as moot.

Lori I. Valenzuela, Justice